In the Matter of the Estate of MILES W. RAPLEE, Deceased.

Surrogate's Court, Yates County, September 25, 1936.

*Lapham & Ryan* [*George I. Teter* of counsel], for Cornelius J. Sackett, as executor, etc., of Emma B. Raplee, deceased, as executrix, and trustee of Miles W. Raplee, deceased.

*Brown & Falkinburg* [*Edward J. Brown* and *Joseph P. Cantales* of counsel], for Maryette Henderson, Miles R. Johnson and Madeline McClure.

*H. C. & H. B. Harpending*, for the First National Bank and Trust Company of Elmira, administrator c. t. a. of Miles W. Raplee, deceased, Irene Keyworth, Corinne Cochran, Dundee State Bank and Dundee National Bank, as assignee of Fuldine Fultz and Ira Fultz.

*George F. Ditmars*, as assignee of Herbert A. Jones, in person.

*Spencer F. Lincoln*, for S. Nelson Jones and Margaret Stevenson,

*Olin T. Nye*, for Clara Johnson.

*McIntyre & Van Steenburg*, for the American Bible Society.

BAKER, S.   The will of Miles W. Raplee was admitted to probate by this court in the year 1916.

So far as the terms of the will are material to the issues here, they provide:

" *Second.* I give to my wife, Emma B. Raplee use, income and management of all my property both real and personal for her comfort, maintenance and support, and further without obligations to account to anyone for what she may desire to use of either the principal or the income."

The third and fourth clauses of the will give, " subject to such use of my wife above mentioned " specific legacies to specific collateral relatives and others.

By the fifth clause the testator directs that the residue of his property, " at the death of my wife, if she survives me," be divided among collateral relatives, each of whom is specifically named.

The last clause of the will is as follows: " I hereby nominate and appoint my wife Emma Briggs Raplee, the executrix and trustee under this will and in no event shall she be required to give bonds or security for any acts in her discretion."

Letters testamentary were granted to Emma B. Raplee upon the probate of the will, June 19, 1916.

Emma B. Raplee died September 3, 1934, leaving a will appointing Cornelius J. Sackett her executor.

The First National Bank and Trust Company of Elmira has been appointed administrator c. t. a. and successor testamentary trustee under the will of Miles W. Raplee.

Cornelius J. Sackett, as executor under the will of Emma B. Raplee, has filed an account of the proceedings of Mrs. Raplee as executor and trustee under the will of her husband, Miles W. Raplee.

The administrator c. t. a. under the will of Miles W. Raplee and certain of the beneficiaries, or their assignees, who have rights as distributees, after the death of Mrs. Raplee, file objections to the account as filed, and ask that it be surcharged to the extent of depreciation in market value of securities purchased and retained by Mrs. Raplee that are not authorized as investments for trust funds.

Contestants also object to expenditures by Mrs. Raplee of funds from the estate used in the purchase of annuities solely for her own benefit.

A fiduciary under a will must be found to have disregarded the terms of the will or a rule of law before he can be found liable. (*Villard* v. *Villard*, 219 N. Y. 482, 499.)

A testator has unlimited authority to direct how funds shall be invested, or may leave it to the discretion of trustee, who is not liable if he acts within the limits of his discretion, and does not abuse it. (*Matter of Reid*, 170 App. Div. 631; *Matter of Clark*, 257 N. Y. 132.)

The will gives to the widow not only the use, income and principal of the estate for her comfort, maintenance and support, as she may desire, but intrusts to her the sole management of all the property, with no limitation on her management.

This in effect gives her power to exercise her own judgment and discretion in the problems of dealing with the estate.

The provision in the second clause, that the widow shall be free from obligation to account for what she may desire to use and the further provision in the seventh clause of the will that " in no event shall she be required to give bonds or security for any act in her discretion," expresses testator's confidence in the judgment and discretion of his widow and clearly expresses an intention that she shall be free from annoyance by those who must be classed as secondary takers and secondary objects of testator's bounty.

This leads to the conclusion that it was the intention of the testator that his wife as life tenant of his estate should be at liberty to use her sound discretion as to retaining investments made by him and as to reinvestments.

But even without such an intention expressed in the will, it can well be questioned whether the law limits a life tenant, with the broad unshackled discretion granted in this will, to so-called " legals " for investments.

Mrs. Raplee, under the will, was given not only possession of the estate, but also the rents and profits thereof. This gave her a *legal* estate for life. (Real Prop. Law, § 92.)

She is referred to in this decision as the life tenant.

This will does not purport to create any trust whatever. Nothing is bequeathed or devised upon trust, but all bequests are made directly to the beneficiaries named in every instance with payment ordered to be made directly to the beneficiaries at the death of Mrs. Raplee.

To the constitution of every express trust there are essential these elements, namely, a trustee, an estate devised to him and a beneficiary. The trustee and the beneficiary must be distinct personalities or otherwise there could be no trust. (*Greene* v. *Greene*, 125 N. Y. 506, 510; *Rose* v. *Hath*, Id. 427.)

To constitute a testamentary trustee there must be some express trust set up in the will. Merely calling an executor or life tenant a trustee does not make him such. Every executor and every life tenant in possession is, in a general sense, a trustee. But he is not a trustee in the same sense in which that term is used in courts of equity and in the statutes. (*Matter of Hawley*, 104 N. Y. 250.)

The legal practice of classifying as a " trust " a holding of property by a fiduciary, endowed with certain powers and charged with certain duties, is merely a convenient nomenclature. (*Matter of Grauer*, 146 Misc. 469.)

It is true that ordinarily a life tenant in possession of property is a fiduciary and in a restricted sense a trustee inasmuch as he is in possession of property in which others have an interest. In this case, however, the life tenant had the possession, management and right to dispose of the property, for her comfort, maintenance and support, without obligation to account to any one for what she might desire to use of either the principal or the income, and as to such as she did dispose of, neither she nor her executor is bound to account to the remaindermen, because they have no interest in it. (*Seaward* v. *Davis*, 198 N. Y. 415.)

A life tenant with such powers of disposal is not to be regarded as falling within the class whose investments are limited by statute.

It would seem that such a rule was intended to apply only to an actual, express and subsisting trust similar to the application of the Statute of Limitations in *Matter of Miller* (15 Misc. 556).

March 8, 1928, Emma B. Raplee filed a petition in this court asking for an intermediate judicial settlement of her accounts as executrix and trustee under the will of Miles W. Raplee, deceased. All parties interested in the provisions of such will were then of full age and were duly served with citation, returnable April 3, 1928; with the petition was filed a detailed account of her proceedings, containing among other things a statement of securities then held by her as life tenant, some of which remained in the possession of the life tenant until her death, and are now attacked by the remaindermen as unauthorized and indiscrete investments.

The parties cited in that proceeding included those now questioning the validity of investments of the corpus of the estate retained or made by Mrs. Raplee. No one, excepting the petitioner and her attorney, appeared on April 3, 1928, and no objections were made to any items of the intermediate account. A decree was thereupon entered judicially settling the intermediate account as filed. This decree is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained. (Surr. Ct. Act, § 80.)

This decree, however, went beyond the prayer of the petition and, without proof of an abuse of the discretion granted by the will to the life tenant, attempted to limit that discretion by ordering that future investments or reinvestments of the principal by the life tenant be limited to investments " in such income producing securities as are expressly permitted and authorized for the investment of trust funds in this State."

This provision in the decree of April 3, 1928, must be construed as advisory, rather than mandatory, for the surrogate is without power to himself exercise or limit the discretion granted to an executor, or in this case life tenant, until he has proof from which he can find an abuse or threatened abuse of discretion or a willful, reckless disregard of the will or the law. (*Carrier* v. *Carrier*, 226 N. Y. 114.)

The courts may act when trustees abuse their discretion, or act in bad faith, but not otherwise. (*Matter of Allen*, 111 Misc. 93; affd., 202 App. Div. 810; *Ireland* v. *Ireland*, 84 N. Y. 321, 326; *Matter of Foster*, 30 Misc. 573.)

While we have reached the conclusion that Mrs. Raplee as life tenant in possession and control of her husband's estate in the exercise of the discretion as to the character of investments granted her in the will is not limited by statute in her selection of securities as is a trustee, nevertheless, she owed a duty to the remaindermen to manage the unused principal of the estate prudently. The test of her fidelity is not whether she invested the estate in any particular class of securities, but rather did she exercise the care and judgment which a prudent investor would have exercised in his own like affairs. (*Matter of Clark*, 257 N. Y. 132.)

The burden is on those who have filed surcharges to sustain their position and prove by a fair preponderance of evidence that such investment which they criticise was not such as a prudent person would purchase.

This prudence required of the life tenant must be determined by conditions as they existed at the time of the investment. (*Purdy* v. *Lynch*, 145 N. Y. 462.)

The fact that his judgment turned out to be wrong is not a showing that he failed to exercise a sound discretion. (*Matter of Clark*, *supra.*)

Facts must be looked at as they existed at the time of investment. (*Purdy* v. *Lynch*, 145 N. Y. 462, 475.)

No proof has been submitted from which an inference can fairly be drawn that any of the investments made by Mrs. Raplee were at the time, or at any time, hazardous, speculative or unsound securities which a prudent person would have avoided. In the absence of such proof these objections and surcharges must be overruled.

The account filed by the administrator c. t. a. discloses a startling depreciation in the market value of many of the securities, purchased a decade or more ago. The cause of the depreciation amounting to over $10,000 is not shown, and of course there can be no presumption of maladministration on the part of the life tenant, but rather, the burden of proving such is on the contestants.

Instead of offering such proof, they seem to have relied on the statute limiting the character of investments by trustees of express trusts.

The account discloses that Mrs. Raplee used $2,600 of the principal of the estate in the purchase of annuities.

Objections are made to such use of a small portion of the estate.

The will clearly gives Mrs. Raplee the right to use what she may desire of the principal for her comfort, maintenance and support. The purchase of the annuities undoubtedly augmented her income and it must be concluded that Mrs. Raplee, in the exercise of discretion, " desired " to do this rather than use small portions of the corpus from time to time as her needs growing with her age and infirmities required.

This was not an unreasonable exercise of her discretion. (*Matter of Fitzpatrick*, 252 N. Y. 121; *Zimmerman* v. *Hubbs*, 131 App. Div. 423 [4th Dept.].)

The objections to the account are overruled. A decree may be entered accordingly.